UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DAVID M. | : |
| | : |
| v. | :    C.A. No. 24-00293-LDA |
| | : |
| LELAND C. DUDEK, Acting Commissioner Social Security Administration | : <br> : <br> : |

**MEMORANDUM AND ORDER**

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed his Complaint on July 26, 2024 seeking to reverse the decision of the Commissioner. On January 13, 2025, Plaintiff filed a Motion to Reverse the Decision of the Commissioner. (ECF No. 11). On February 10, 2025, the Commissioner filed a Motion to Affirm the Decision of the Commissioner. (Document No. 13). No reply brief was filed.

With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Based upon my review of the record, the parties' submissions, and independent research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, Plaintiff's Motion to Reverse (Document No. 11) is DENIED and the Commissioner's Motion to Affirm (ECF No. 13) is GRANTED.

I. **PROCEDURAL HISTORY**

Plaintiff filed an application for SSI on January 14, 2022 (Tr. 266-275) and for DIB on February 10, 2022 (Tr. 278-279) which were both denied initially on September 10, 2022 (Tr. 84-93, 95-104) and on reconsideration on November 25, 2022. (Tr. 106-113, 115-122). Plaintiff requested an Administrative Hearing which was held on July 20, 2023 before Administrative Law Judge Stephen M. Szymczak (the "ALJ") at which Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified. (Tr. 33-82). The ALJ issued an unfavorable decision to Plaintiff on September 29, 2023. (Tr. 14-27). On May 23, 2024, the Appeals Council denied Plaintiff's request for review. (Tr. 1-3). A timely appeal was then filed with this Court.

II. **THE PARTIES' POSITIONS**

Plaintiff argues that the ALJ's RFC is not supported by substantial evidence. The Commissioner disputes Plaintiff's claim.

III. **THE STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932

F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of HHS, 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her

decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. Id.

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A. Opinion Evidence

For applications like this one, filed on or after March 27, 2017, the Administration has fundamentally changed how adjudicators assess opinion evidence. The requirements that adjudicators assign "controlling weight" to a well-supported treating source's medical opinion that is consistent with other evidence, and, if controlling weight is not given, must state the specific weight that is assigned – are gone. See Shaw v. Saul, No. 19-cv-730-LM, 2020 WL 3072072, *4-5 (D.N.H. June 10, 2020) citing Nicole C. v. Saul, Case No. cv 19-127JJM, 2020 WL 57727, at *4 (D.R.I. Jan. 6, 2020) (citing 20 C.F.R. § 404.1520c(a)). Under the newly applicable regulations, an ALJ does not assign specific evidentiary weight to any medical opinion and does not defer to the opinion of any medical source (including the claimant's treating providers). 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the relative persuasiveness of the medical evidence in terms of five specified factors. Id.

The five factors the ALJ considers in evaluating the persuasiveness of a medical opinion are supportability (the relevance of the opinion's cited objective medical evidence), consistency (how consistent the opinion is with all of the evidence from medical and non-medical sources), treatment/examining relationship (including length of treatment relationship, frequency of examinations, purpose of treatment relationship, and existence and extent of treatment/examining relationship), specialization (the relevance

of the source's specialized education or training to the claimant's condition), and what the Administration refers to as "other factors" (the medical source's familiarity with the claimant's medical record as a whole and/or with the Administration's policies or evidentiary requirements). Shaw, 2020 WL 3072072 at *4 citing 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5) (emphasis supplied). Of the five factors, the "most important" are supportability and consistency. Id. §§ 404.1520c(a), 404.1520c(b)(2), 416.920c(a), 416.920c(b)(2).

While the ALJ must consider all five of the factors in evaluating the persuasiveness of medical evidence, when preparing the written decision, the ALJ is, in most cases, only required to discuss application of the supportability and consistency factors. Id. §§ 404.1520c(b)(2), 416.920c(b)(2). Only where contrary medical opinions are equally persuasive in terms of both supportability and consistency is the ALJ required to discuss their relative persuasiveness in terms of the treatment/examining relationship, specialization, and other factors. Id. §§ 404.1520c(b)(3), 416.920c(b)(3). In addition, where a single medical source offers multiple opinions, the ALJ is not required to discuss each opinion individually, but instead may address all of the source's opinions "together in a single analysis." Id. §§ 404.1520c(b)(1), 416.920c(b)(1).

Moreover, while the ALJ must consider all of the relevant evidence in the record, Id. §§ 404.1520b(a)-(b), 416.920b(a)-(b), the ALJ need not discuss evidence from nonmedical sources, including, e.g., the claimant, the claimant's friends and family, educational personnel, and social welfare agency personnel. Id. §§ 404.1502(e), 404.1520c(d), 416.902(j), 416.920c(d). And while the regulations require the ALJ to discuss the relative persuasiveness of all medical source evidence, Id. §§ 404.1520c(b),

416.920c(b), the claimant's impairments must be established specifically by evidence from an acceptable medical source, Id. §§ 404.1521, 416.921.

"Acceptable medical sources" are limited to physicians and psychologists, and (within their areas of specialization or practice) to optometrists, podiatrists, audiologists, advanced practice registered nurses, physician assistants, and speech pathologists. Id. §§ 404.1502(a), 416.902(a). Evidence from other medical sources, such as licensed social workers or chiropractors, is insufficient to establish the existence or severity of a claimant's impairments. Id. Finally, the ALJ need not discuss evidence that is "inherently neither valuable nor persuasive," including decisions by other governmental agencies or nongovernmental entities, findings made by state disability examiners at any previous level of adjudication, and statements by medical sources as to any issue reserved to the Commissioner. Id. §§ 404.1520b(c), 416.920b(c).

### B.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of HHS, 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.     Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of HHS, 758 F.2d 14, 17 (1st Cir. 1985).

### D.     The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of HHS, 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E.      Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell,

461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1. Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. Social Security Ruling ("SSR") 16-3p, 2017 WL 4790249, at *49462;

20 C.F.R. § 404.1529(c)(3).  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of HHS, 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).  However, the individual's statements about the intensity, persistence, and limited effects of symptoms may not be disregarded "solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms."  SSR 16-3p, 2017 WL 4790249, at *49465.

### 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for

discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)). Guidance in evaluating the claimant's statements regarding the intensity, persistence, and limiting effects of subjective symptoms is provided by SSR 16-3p, 2017 WL 4790249, at *49462 (Oct. 25, 2017). It directs the ALJ to consider the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; any other relevant evidence; and whether statements about the intensity, persistence, and limiting effects of symptoms are consistent with the medical signs and laboratory findings. SSR 16-3p, 2017 WL 4790249, at *49465.

V. **APPLICATION AND ANALYSIS**

A. **The ALJ's Decision**

At Step 2, the ALJ found that Plaintiff had the severe impairments of anxiety disorder, depressive disorder, polysubstance abuse, cervical and lumbar degenerative disc disease, and bilateral carpal tunnel syndrome. (Tr. 19). At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically

equaled a Listing.  Id. at 20.  The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") to perform a limited range of light work.  Id. at 22.  Based on this RFC and opinion testimony from the VE, the ALJ found that Plaintiff was not disabled because there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.  Id. at 26.

### B. Substantial Evidence Supports the ALJ's RFC Determination

Plaintiff argues this case should be remanded because the ALJ did not assess an RFC that appropriately accounts for Plaintiff's mental and physical limitations.  Turning first to Plaintiff's challenge to the mental RFC, Plaintiff asserts that the ALJ erred because he failed to account for Plaintiff's "moderate limitations to his ability to maintain concentration, persistence or pace."  (ECF No. 11 at p. 5).  Plaintiff argues that the record supports Plaintiff's "racing thoughts, excessive worrying, and general feelings of anxiety," that his long and short recall was in the "low average to average range," and that "he needs some prodding" to complete tasks.  Id. at pp. 6-7.  Plaintiff contends these factors all contribute to time off task.  He also argues his history of anxiety and depression have been "intensifying over the last five years."  Id. p. 6.  Plaintiff asserts that it was error for the ALJ to assess an RFC that omits a limitation regarding Plaintiff's ability to sustain an ordinary work routine.  Id. at pp. 6-7.

Plaintiff's argument that the ALJ should have included some limitation in the RFC on sustaining an ordinary work routine is premised on the ALJ's finding that he had moderate limitations to his ability to maintain concentration, persistence, or pace in the paragraph B criteria.  However, the paragraph B limitations "are not an RFC assessment but are used [only] to rate the severity of mental impairment(s) at steps 2 and 3 of the

sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4. (emphasis added). The moderate limitations the ALJ found simply do not translate into any specific RFC restriction or require a finding of disability. See Cheyenne R. v. Kijakazi, No. 21-473WES, 2022 WL 18910866, at *9 (D.R.I. Sept. 23, 2022) (collecting cases finding "'moderate' mental limitations are not per se work preclusive"); see also Dias v. Colvin, 52 F. Supp. 3d 270, 285 (D. Mass. 2014) ("[T]he paragraph B criteria, however, does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment.").

The evidence in the record reasonably supports the ALJ's assessment of the mental RFC and confirms that the ALJ weighed all of the evidence, including the factors articulated by Plaintiff. For example, despite Plaintiff's assertion that his history of anxiety and depression were "worsening over the last five years," he points to no specific evidence of record to support his assertion. The evidence instead demonstrates that Plaintiff received no mental health treatment since his alleged onset date (Tr. 23) and had benign mental examinations throughout 2021 and 2022. Id. In July 2022, Dr. Louis A. Cerbo conducted a consultative examination and did not endorse any specific functional limitations. Dr. Cerbo noted that Plaintiff presented with linear and goal-directed thought processes and normal thought content. (Tr. 468). Dr. Cerbo additionally noted Plaintiff was "able to maintain and sustain concentration and attention during" the examination and needed only "minimal redirection." (Tr. 24). This is consistent with Plaintiff's own statement in his Function Report that he could "pay attention" for "a few hours." (Tr. 331). Finally, both state agency psychological consultants noted Plaintiff had no sustained concentration and persistence limitations. (Tr. 91, 102). The ALJ's mental RFC

is more restrictive than Dr. Cerbo's opinion that Plaintiff required no specific functional or work-related limitations and was supported by Plaintiff's own testimony and lack of treatment records. In short, Plaintiff has not shown that the ALJ erred by not assessing an RFC limitation on his ability to maintain concentration, persistence, or pace on this record, and substantial evidence supports the ALJ's RFC finding, and, thus, it must be affirmed.

Next, Plaintiff contends that the RFC does not account for Plaintiff's "severe physical impairments." (ECF No. 11 at p. 8). Plaintiff asserts that the ALJ's analysis is internally inconsistent and conclusory, and that Plaintiff's testimony, treatment history and medical evidence of record, activities of daily living, work history, and examining source opinions do not support the RFC. (ECF No. 11 at pp. 8-9). When boiled down, Plaintiff's challenge asks this Court to improperly reweigh or reinterpret evidence in a manner more favorable to his claim. While reasonable minds might differ as to the import of certain discrete portions of this record, Plaintiff has not shown that the ALJ's findings lack adequate support.

In his Decision, the ALJ summarized Plaintiff's Function Report, which he completed in February 2022, and self-reported that he is "unable to bend, stoop, lift weight, or stand for extended periods of time…[and is] affected by constant back pain." (Tr. 22). In that Report, Plaintiff noted that he "watches television, tries to go to an AA meeting, and sometimes tries to take a short walk for exercise." Id. Plaintiff noted that he can "walk for one-quarter to one-half of a mile before requiring rest [and that he can] pay attention for a few hours." (Tr. 22). He stated, "that most of his pain is located in the lower back." Id. He also testified that he is affected by wrist pain and numbness in

his fingers. He reported having slight problems using his wrist, but experiences significant pain when bending over. Id. Despite Plaintiff's subjective complaints, the ALJ noted that Plaintiff's physical examinations showed "few abnormalities" and that Plaintiff "retained normal motor strength and cerebellar function. He exhibited good rapid hand alternations." (Tr. 23). Radiologic imaging in March 2022 showed degenerative disc at C6-C7 but was otherwise unremarkable. His lumbosacral spine imaging showed multilevel degenerative disc disease, compression fracture L1 age indeterminate and arthritic change facets L5-S1. Id. He reported feeling "well in general" and using only Advil and Salonpas patches for low back pain. Id. Plaintiff also indicated he could lift up to twenty pounds. (Tr. 331). The consultative examination completed by NP Anita Tzovolos in April 2022 found normal range of motion with no acute distress and that Plaintiff exhibited tenderness in the right lower back but was able to perform fine dexterous movement and able to lift, handle, and carry light objects. Plaintiff could walk on heels and toes and squat and rise to a standing position with ease. (Tr. 24). NP Tzovolos recommended Plaintiff could perform an even greater range of light work than what was ultimately adopted by the ALJ. (Tr. 24).

Ultimately, Plaintiff's challenge to the ALJ's evaluation of the record in this case inappropriately asks this Court to reweigh the evidence in a manner more favorable to him. See, e.g., Seavey v. Barnhart, 276 F.3d 1, 10 (1st Cir. 2001) (the ALJ is responsible for weighing the evidence and resolving conflicts). The ALJ's resolution of evidentiary conflicts must be upheld if supported by substantial evidence, even if contrary results might have been tenable also." Benetti v. Barnhart, 193 Fed. Appx. 6, 2006 WL 255972 (1st Cir. Sept. 6, 2006) (per curiam) (citing Rodriguez Pagan v. Sec'y of HHS, 819 F.2d

1 (1st Cir. 1987)). In other words, the issue presented is not whether this Court would have rendered a disability finding reviewing this record de novo but rather whether the record contains substantial evidence sufficient to support the ALJ's findings. Since Plaintiff has shown no error in the ALJ's evaluation of the medical evidence or in his ultimate findings, and those findings are adequately supported by the record, the ALJ's decision must be affirmed.

## VI. CONCLUSION

For the reasons discussed herein, Plaintiff's Motion to Reverse (ECF No. 11) is DENIED and Defendant's Motion to Affirm (ECF No. 13) is GRANTED. Further, the Clerk shall enter Final Judgment in favor of the Commissioner.

SO ORDERED

 /s/  Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
April 15, 2025